**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| RONA YEN, KELLY WEIDENBACH and MELANIE YANG, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BARNEYS NEW YORK, INC., a Delaware corporation, and DOES 1-50, inclusive,<br><br>Defendants. | Case No._____<br><br><br><br>**CLASS ACTION COMPLAINT**<br><br>(Jury Trial Demanded) |

Plaintiffs, Rona Yen ("Yen"), Kelly Weidenbach ("Weidenbach") and Melanie Yang ("Yang") (collectively, "Plaintiffs"), by and through their undersigned attorneys, individually and on behalf of all others similarly situated, bring this class action against Barneys New York, Inc. ("Barneys" or "Defendant") and allege as follows:

## NATURE OF THE CASE

1.      This is a civil class action filed under the 28 U.S.C. §§ 1332(d)(2) and (6) seeking monetary damages, restitution, injunctive and declaratory relief from Defendant, Barneys New York, Inc., for advertising inflated suggested retail prices and corresponding fictitious price discounts for its BarneysWarehouse.com merchandise (hereinafter referred to as "Warehouse Merchandise").

2.      Barneys is a luxury fashion retailer and operates thirteen (13) Barneys New York retail stores throughout the United States, including its flagship location at 660 Madison Avenue, New York, New York, and ten (10) Barneys Warehouse retail stores throughout the United States.[1]  Barneys Warehouse "offers Barneys New York's celebrated designer style for a

---

[1] http://www.barneys.com/locations (last visited January 16, 2017).

steal . . . the legendary lineup of designers Barneys New York has always been known for--at prices that made lining up at the break of dawn well worth it . . . [t]oday, though, there's no need to wait . . . of course, there's BarneysWarehouse.com."[2]   Barneys operates the Barneys.com website as an e-commerce extension to its Barneys New York retail locations and the BarneysWarehouse.com website as an e-commerce extension to its Barneys Warehouse retail locations.   Barneys online advertising scheme concerning its BarneysWarehouse.com website is the subject of this suit.

3.     Historically, the Barneys Warehouse Sale held in New York City originated "[t]o generate both extra revenue and advertising, as well as to move through inventory, Barneys would host a clearance event in the 17,000 square foot first floor of the warehouse building Chelsea."[3]   Barneys created BarneysWarehouse.com as an e-commerce extension of this self-described "legendary" Warehouse Sale, and the profitability of the Barneys Warehouse Sale, and, by extension, BarneysWarehouse.com, is entirely dependent on the perception of the consumer public that valuable Warehouse Merchandise is being offered at specific percentage discounts from the suggested retail prices of merchandise previously offered for sale at Barneys New York retail stores and/or on Barneys.com.[4]   Accordingly, BarneysWarehouse.com attracts

---

[2] http://www.barneyswarehouse.com/about/aboutus (lasted visited January 16, 2017).

[3] https://en.wikipedia.org/wiki/Barneys_Warehouse (last visited January 16, 2017).

[4] See, e.g., Kerry Folan, Breaking: Barneys is Launching a Massive Discount Outlet Site, RACKED (Jan. 31, 2013), http://www.racked.com/2013/1/31/7690199/barneys-to-launch-a-permanent-warehouse-sale-site-on-monday ("The brand has announced that they will be launching BarneysWarehouse.com, an outlet site featuring deeply discounted designer wares . . . [e]ssentially, it sounds like Barneys is turning the temporary discount site into a permanent online outlet store . . . [i]t will be used for liquidation of past-season sale items at discounts of up to 75% percent off . . . [n]ot everyone thought the first online warehouse sale measured up to the discounts and great rare finds that shoppers have come to expect from the physical sale."); see also, Matt Welty, Barneys Brings the Sales All-Year-Round with Warehouse Website Launch, COMPLEX (Jan. 31, 2013), http://www.complex.com/style/2013/01/barneys-brings-the-sales-all-year-with-launch-of-warehouse-website ("The retail legend will launch BarneysWarehouse.com on February 4 according to WWD.  Now, you can cop some of the most popular brands for a fraction of the original price."); see also, Charlotte Cowles, Barneys' Outlet Stores to Go Online, NEW YORK MAGAZINE (Jan. 31, 2013), http://nymag.com/thecut/2013/01/barneys-outlet-stores-to-go-online.html ("Great news for anyone who has trekked to a Barneys outlet in some far-flung location, or stripped to their underwear at the biannual Barneys warehouse sale: Starting Monday, you'll be able to shop their leftover inventory online, permanently . . . [y]ou may recall that Barneys put their

bargain hunters with sensitive expectations of merchandise with higher perceived values and corresponding percentage discounts, and because the significance and meaning of percentage discounts are entirely dependent on the suggested retail price values of Warehouse Merchandise, the value and price expectations of BarneysWarehouse.com consumers are harmed by Barneys inflated pricing scheme.

4.    During the applicable Class Periods, Barneys purposefully and willfully misrepresented the existence, nature and amount of price discounts on its BarneysWarehouse.com website by purportedly offering percentage discounts from expressly referenced suggested retail prices. The BarneysWarehouse.com pricing scheme prominently promoted suggested retail prices of Warehouse Merchandise accompanied by a strikethrough of such suggested retail prices, and certain percentage discounts thereon, which made reference to the discounts offered from these suggested retail prices.[5]

5.    The advertised suggested retail prices communicated the worth and value of Warehouse Merchandise, yet did not represent prices at which such merchandise was **ever** offered for sale at Barneys New York retail locations and/or on Barneys.com and did not constitute the prevailing market suggested retail prices or values for such merchandise preceding the publication of the advertisement.

---

most recent warehouse sale online for two weeks last August; it turns out that was actually a practice run for a full-time site for liquidating past-season items that didn't sell. In other words, it'll be like the Barneys version of the Outnet, with items marked off up to 75 percent."); *see also,* Rheana Murray, *Barneys Warehouse sale launches permanent website*, NEW YORK DAILY NEWS (Feb. 5, 2013) http://www.nydailynews.com/life-style/fashion/barneys-warehouse-sale-moves-online-article-1.1255881 ("It's finally here: The Barneys Warehouse sale you can visit 365 days a year, with just the click of a button. Fashion-crazed deal-hunters can now shop the legendary bargains year-round at Barneyswarehouse.com, which launched Monday . . . the warehouse sale — where shoppers can score up to 75% off designer duds — was previously held just twice a year.").

[5] *See* David Adam Friedman, *Reconsidering Fictitious Pricing,* 100 MIN. L. REV. 921, 934 (2016) ("[A] higher prior-reference price can manipulate transactions by signaling that an offer brings higher value but at a lower price."); *see also,* ORDERWISE, *Introducing eBay & Amazon Strikethrough Pricing,* http://www.orderwise.co.uk/general-2/introducing-strikethrough-pricing/ (Apr. 14, 2016)("[T]o draw in potential customers, many marketplaces traders will often employ the tactic of using strikethrough pricing. Strikethrough pricing is commonplace within pretty much all retail environments, where businesses will display both a "was" and "now" price in order to promote their special offers. This is a tried and tested method of encouraging buying behaviour as consumers can see the discount being offered and are therefore aware that they are getting a good deal on an item that was previously more expensive than what they will pay.").

6.      Rather, Barneys advertised Warehouse Merchandise with inflated suggested retail prices higher than the suggested retail prices of identical merchandise previously offered for sale at Barneys New York retail locations and/or on Barneys.com.

7.      Barneys pricing scheme is illustrated by comparing the suggested retail prices as advertised on its Barneys.com website to the inflated suggested retail prices of identical merchandise as advertised on its BarneysWarehouse.com website. "Style #" identifiers, or unique 9-digit identifiers associated with merchandise sold on BarneysWarehouse.com, corresponds to identical 9-digit identifiers for identical merchandise previously offered for sale at Barneys New York retail locations and/or Barneys.com.

8.      A comparison of the advertised suggested retail prices of identical merchandise with identical 9-digit identifiers shows that certain Warehouse Merchandise as advertised on BarneysWarehouse.com was **never** advertised to the consumer public at Barneys New York retail locations and/or on Barneys.com at the suggested retail prices at issue in this case.

9.      Rather, identical merchandise with identical 9-digit identifiers was advertised on BarneysWarehouse.com with inflated suggested retail prices higher than the suggested retail prices of identical merchandise with identical 9-digit identifiers as advertised on Barneys.com.

10.     Barneys has misled and profited from the consumer public by inflating the value of its Warehouse Merchandise and creating the false perception of a valuable bargain.

11.     It has done so in order to induce consumers to purchase Warehouse Merchandise at specific percentage discounts from inflated suggested retail prices.

12.     But for the mistaken belief of consumers that they could obtain equally valuable merchandise previously offered for sale at Barneys New York retail stores and/or on

Barneys.com at specific percentage discounts, consumers would not have made these purchases, and would have paid less than the amount actually paid.

13.     In other words, not only would Plaintiffs and the consumer public have not purchased Warehouse Merchandise in the absence of Barneys misrepresentations, Plaintiffs and the consumer public also paid a price premium for such merchandise because the misrepresentations necessarily inflated the represented value of the merchandise and thus lowered the final value of the merchandise ultimately purchased.

14.     Plaintiffs bring this action on behalf of themselves and all other similarly situated consumers who purchased Warehouse Merchandise from BarneysWarehouse.com within the States of New York, California and Florida.[6]

15.     Plaintiffs seek to stop the dissemination of Barneys false, deceptive and misleading advertising, correct the false and misleading perception that Barneys has created in the minds of consumers, and to obtain monetary redress and injunctive relief for those who have purchased Warehouse Merchandise from within the States of New York, California and Florida. Specifically, Plaintiffs, individually and on behalf of all others similarly situated, seek damages, restitution and other equitable remedies pursuant to New York General Business Law ("NYGBL") §§ 349 and 350, California Business & Professions Code § 17200, *et seq.* ("UCL"), California Business & Professions Code § 17500, *et seq.* ("FAL"), California Consumers' Legal Remedies Act, Civil Code § 1750, *et seq.* ("CLRA"), and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq*. ("FDUPTA").

16.     The New York Class consists of all persons who purchased Warehouse Merchandise from within the State of New York during the applicable statute of limitations

---

[6] Plaintiffs reserve the right to amend or modify the Class definitions in connection with a motion for class certification or as warranted by discovery.

period, the California Class consists of all persons who purchased Warehouse Merchandise from within the State of California during the applicable statute of limitations period, and the Florida Class consists of all persons who purchased Warehouse Merchandise from within the State of Florida during the applicable statute of limitations period, respectively.

17.     Through its false and deceptive pricing scheme, Barney's has violated and continues to violate New York, California and Florida law.  Barneys' inflated pricing scheme was uniformly disseminated to New York, Florida and California consumers via its BarneysWarehouse.com website and uniform electronic marketing campaigns, including, *inter alia,* advertisements containing references to suggested retail prices and accompanying percentage discounts thereon.[7]

18.     Thousands of consumers in New York, Florida and California were victims of Barneys unlawful pricing scheme and thousands more will be deceived if such practices were to continue.

19.     At all relevant times, Barneys has been under a duty to Plaintiffs and other New York, California and Florida consumers to disclose the truth about its reference to suggested retail prices and Barneys has fraudulently concealed from, and intentionally failed to disclose to, Plaintiffs and other New York, California and Florida consumers suggested retail prices as advertised on BarneysWarehouse.com were a fictitious inflated price from the advertised suggested retail prices of identical merchandise offered for sale at Barneys New York retail locations and/or on Barneys.com.

---

[7] *See, e.g.,* , www.facebook.com/BarneysWarehouse/ (last visited January 16, 2017) (January 2, 2017: "Last chance to enjoy savings of up to 85% off!"); (December 9, 2016: "It's day 3 of our 8 Days of Holiday Gifting! Enjoy a total savings of up to 80% off when you take 50% off gifts for kids."); and (November 25, 2016: "Today Only! Savings up to 80% off in Today's Style Sprint").

20.     The facts Barneys misrepresented and/or failed to disclose are facts that a reasonable consumer would consider material, *i.e.*, facts which contribute to a reasonable consumer's decision to purchase Warehouse Merchandise.

21.     Barneys' false representations concerning suggested retail prices and accompanying false representations about the purported savings, discounts and bargains associated with Warehouse Merchandise are objectively material to the reasonable consumer and served to inflate the value that consumers ultimately attached to such merchandise.[8]

22.     Barneys knew that its price advertising was false, deceptive, and misleading as defined by state and federal statutory and regulatory laws and purposefully and willfully directed this fraudulent pricing scheme to influence purchasing decisions and unlawfully profit from Plaintiffs and the consumer public. [9]

23.     Plaintiffs and members of the consumer public believe suggested retail prices reflect the price at which merchandise is generally sold and the general value of such merchandise, and if a percentage reduction from this suggested retail price is advertised, Plaintiffs and the consumer public are led to believe that such a discount from the suggested retail price represents a legitimate bargain of measurable value, and the greater the percentage discount the more attractive a bargain becomes, thus creating the necessary incentive for a

---

[8] *See* Derek Thompson, *The 11 Ways That Consumers Are Hopeless at Math*, THE ATLANTIC (Jul. 6, 2012) http://www.theatlantic.com/business/archive/2012/07/the-11-ways-that-consumers-are-hopeless-at-math/259479/ ("[Consumers] are heavily influenced by the first number ... [and compared to the original suggested retail price tag], "stores can massage or 'anchor' your expectations for spending ... bargains literally make us feel good about ourselves. Even the most useless junk in the world is appealing if the price feels like a steal."); *see also*, Vanessa Page, *The Psychology Behind Why People Buy Luxury Goods*, INVESTOPEDIA (Sep. 11, 2015) http://www.investopedia.com/articles/personal-finance/091115/psychology-behind-why-people-buy-luxury-goods.asp, ("We conclude that higher priced goods are of better quality and we spend irrationally, believing you get what you pay for regardless of whether the goods are proven better than their affordable counterparts ... [p]eople buy luxury goods for a variety of reasons, all of which are related to the strong emotions we attach to expensive material goods.").

[9] *See* Gorkan Ahmetoglu et al., *Pricing Practices: A Critical Review of Their Effects on Consumers*, 21 J. RETAILING & CONSUMER SERVS. 696, 699 (2014) ("[A] large body of evidence show[s] that the presence of a reference price increases consumers' deal valuations and purchase intentions and can lower their search intentions ..."); *see also*, Friedman, *supra* note 5, at 933-34 ("The anchoring of the sale price to a 'former' price makes the sale price more attractive than the price would have been had it stood alone ... A higher *fictitious* 'former' price disingenuously causes the consumer to attach a higher level of value to an item that it would have had the pricing been honest.").

consumer to make a purchasing decision.[10]  If a suggested retail price does not correspond to a price at which a substantial number of sales are made, or, where, like here, the suggested retail price is fictitiously inflated from the original advertised suggested retail price, the advertisement of any percentage price reduction misleads the consumer public concerning the final value of such discounted merchandise.

24.     Plaintiffs relied on Barneys' false representations of suggested retail prices and accompanying percentage discounts when purchasing Warehouse Merchandise, and Plaintiffs and the New York, California and Florida Classes would not have made their purchases, and would have paid less for the Warehouse Merchandise they did purchase, but for Barneys' false representations of suggested retail prices and illusory percentage price discounts.

25.     In other words, not only would Plaintiffs and the consumer public have not purchased Warehouse Merchandise in the absence of Barneys misrepresentations, Plaintiffs and the consumer public also paid a price premium for such merchandise because the misrepresentations necessarily inflated the represented original value of the merchandise and thus lowered the final value of the merchandise ultimately purchased, irrespective of any applicable percentage discount thereon.

26.     Plaintiffs and the New York, California and Florida Classes believed the accuracy of the inflated suggested retail prices advertised by Barneys and such fictitious prices led them to falsely believe that they purchased more valuable Warehouse Merchandise at specific percentage discounts, and ultimately harming the value and price expectations of BarneysWarehouse.com consumers.

---

[10] *See* Friedman, *supra* note 5, at 927 ("[Discounts from suggested retail prices] exploit consumer behavioral tendencies by presenting a pricing 'anchor' to shoppers that signals that the item has high value and that the consumer is getting a bargain.").

## PARTIES

27.     Plaintiff Rona Yen is a citizen of the State of New York.  In reliance on Barneys' false and deceptive advertising, marketing and pricing schemes, from within New York State Yen purchased the "America Widgeon Faux-Fur -Trimmed Coat," Style #504521687 from BarneysWarehouse.com with an advertised suggested retail price of $154.00 before all applicable discounts.[11]   The identical item bearing Style #504521687 was advertised on Barneys.com and displayed an original suggested retail price of $108.00,[12] and as detailed herein, Yen was damaged as a result thereof.

28.     Plaintiff Kelly Weidenbach is a citizen of the State of California.  In reliance on Barneys' false and deceptive advertising, marketing and pricing schemes, from within the State of California Weidenbach purchased the "Incotex Twill Ray Pants," Style #504556774 from BarneysWarehouse.com with an advertised original retail price of $500.00 before all applicable discounts.[13]  The identical item bearing Style#504556774 was advertised on Barneys.com and displayed an original retail price of $299.00,[14] and as detailed herein, Weidenbach was damaged as a result thereof.

29.     Plaintiff Melanie Yang is a citizen of the State of Florida.  In reliance on Barneys' false and deceptive advertising, marketing and pricing schemes, from within the State of Florida Yang purchased the "America Widgeon Heart-Print Faux-Fur Hooded Coat," Style #504521562 from BarneysWarehouse.com with an advertised original retail price of $140.00 before all

---

[11] A true and correct screenshot of the item as advertised on BarneysWarehouse.com is appended hereto as Exhibit "A."

[12] A true and correct screenshot of the item as advertised on Barneys.com is appended hereto as Exhibit "B."

[13] A true and correct screenshot of the item as advertised on BarneysWarehouse.com is appended hereto as Exhibit "C."

[14] A true and correct screenshot of the item as advertised on Barneys.com is appended hereto as Exhibit "D."

applicable discounts.[15]   The identical item bearing Style #504521562 was advertised on Barneys.com and displayed an original retail price of $98.00,[16] and as detailed herein, Yang was damaged as a result thereof.

30.      Defendant Barneys New York, Inc. is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business located at 575 Fifth Avenue, 11th Floor, New York, New York, 10017, and is registered to do business in the State of New York.   Barneys is a self-described "luxury specialty retailer renowned for having the most discerning edit from the world's top designers … [and operates] a preeminent luxury online store, Barneys.com." [17]   Barneys transacts direct-to-consumer sales through its Barneys New York retail stores and Barneys Warehouse outlet stores, and the e-commerce websites Barneys.com and BarneysWarehouse.com.   The e-commerce websites purposefully have substantially similar design, layout and content, and, as explained by a Barneys representative, "[BarneysWarehouse.com] is [a factory] outlet in the same way that Barneys.com is a flagship and should reflect the Madison Avenue location."[18]

31.      Plaintiffs are informed and believe that each co-defendant, by and through its officers, directors or managing agents ratified, authorized and approved, expressly or implicitly, all of the conduct alleged herein.   Specifically, when reference is made to any act of "Barneys" or "Defendant," such shall be deemed to mean that officers, directors, agents, employees, or representatives of Barneys New York, Inc. committed or authorized such acts, or failed and omitted to adequately supervise or properly control or direct their employees while engaged in

---

[15] A true and correct screenshot of the item as advertised on BarneysWarehouse.com is appended hereto as Exhibit "E."

[16] A true and correct screenshot of the item as advertised on Barneys.com is appended hereto as Exhibit "F."

[17] http://www.barneys.com/about/aboutus (last visited January 16, 2017).

[18] Folan, *supra* note 4.

the management, direction, operation or control of the affairs of the Defendant and did so while acting within the scope of their employment or agency.

## JURISDICTION AND VENUE

32.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the members of the putative Class exceed $5 million, exclusive of costs, and at least one of the members of a proposed Class is a citizen of a different state than Barneys New York, Inc.  The total number of members of each proposed Subclass is greater than one hundred (100).

33.     The Southern District of New York has personal jurisdiction over Barneys New York, Inc. because its principal place of business is located in New York, New York, it is licensed and doing business in the State of New York, and is registered with the New York Secretary of State.

34.     Venue is proper in the Southern District of New York because Barneys has its principal place of business in New York, New York, and a substantial amount of the unlawful marketing decisions that are the subject of this action were made in the State of New York.

35.     The misrepresentations and unfair business practices forming the basis of the claims of Plaintiffs and the Classes originated from the corporate headquarters of Barneys and the vast majority of documents and a significant number of witnesses are all located in this district.

## FACTUAL ALLEGATIONS

36.     Plaintiffs incorporate and reallege by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

37.     On or about January 2, 2016, Plaintiff Yen browsed the BarneysWarehouse.com website and observed certain merchandise with advertised suggested retail prices and specific percentage discounts thereon.

38.     Based on Barneys' representations concerning suggested retail prices, Yen was induced to purchase the "America Widgeon Faux-Fur -Trimmed Coat," Style #504521687, from BarneysWarehouse.com with an advertised suggested retail price of $154.00, and was led to believe that she received a specific percentage discount on her purchase and purchased the item for less than what the merchandise was worth and normally sold at Barnes New York retail stores and/or on Barneys.com.

39.     Upon subsequent investigation it was determined that Barneys never advertised nor sold the item at the represented suggested retail price; rather, Barneys advertised an artificially inflated suggested retail price of this and other items, and Plaintiff was deceived by the inflated suggested retail prices into making this purchase.

40.     Relying on Barneys' misrepresentations and false and deceptive advertising, Yen believed that the item she purchased from BarneysWarehouse.com had a suggested retail price and value of $154.00, and further believed that the item was previously offered for sale at Barneys New York retail locations and/or on Barneys.com for $154.00.

41.     The purported suggested retail price and corresponding price reduction and savings were false and deceptive, as the suggested retail price and value of the item was not the

$154.00 advertised on BarneysWarehouse.com, but the original suggested retail price and value of $108.00 as previously advertised on Barneys.com.

42.     Yen would not have purchased the item in the absence of Barneys' misrepresentations, and would have paid less than she did for the item.  In other words, not only would Plaintiff have not purchased this merchandise in the absence of Barneys' misrepresentations, Plaintiff also paid a premium for the merchandise because the misrepresentations necessarily inflated the ultimate value of the merchandise,[19] and thus lowered the final value of the merchandise specifically purchased, irrespective of any subsequent percentage discount thereon.

43.     Yen and similar consumers who have made purchases of Warehouse Merchandise on BarneysWarehouse.com from within New York State have been personally victimized by and suffered economic injury as a direct result of Barneys' unlawful, unfair and fraudulent conduct.

44.     Further, considering the purpose and history of the Barneys Warehouse sale generally, and the striking similarities between the design, layout and content of the Barneys.com and BarneysWarehouse.com websites, Yen reasonably understood that the suggested retail price of Warehouse Merchandise reflected the original suggested retail price of merchandise previously offered for sale at Barneys New York retail locations and/or on Barneys.com, and the inflated suggested retail price of the merchandise had the effect of leading her to believe that Warehouse Merchandise offered a specific percentage discount from the

---

[19] Friedman, *supra* note 5, at 934 ("A higher *fictitious* 'former price' disingenuously causes the consumer to attach a higher level of value to an item that it would have had the pricing been honest ... [c]onsumers may also use a former reference price as a signal of quality ... [i]f the price signal is genuine--i.e., the good was once offered in a bona fide manner at a higher price, the advertised discount communicates the availability of a true bargain.").

original suggested retail price of an item previously offered for sale at Barneys New York retail locations and/or on Barneys.com.

45.    On account of Barneys' purposeful and willful effort to create the impression that Warehouse Merchandise offered specific percentage discounts from suggested retail prices, BarneysWarehouse.com attracts bargain hunters like Plaintiff with sensitive expectations of merchandise with higher perceived values and corresponding discounts, and these expectations of higher perceived values are harmed by Barneys inflated pricing scheme.

46.    Accordingly, on account of Barneys' purposeful and willful misrepresentations and fraudulent pricing scheme, Yen overestimated the value of the merchandise purchased and ultimately spent more on the merchandise than she would have otherwise but for these misrepresentations.[20]

47.    On or about January 13, 2016, Plaintiff Weidenbach browsed the BarneysWarehouse.com website and observed certain merchandise with advertised suggested retail prices and certain percentage discounts thereon.

48.    Based on Barneys' representations concerning suggested retail prices, Weidenbach was induced to purchase "Incotex Twill Ray Pants," Style #504556774, from BarneysWarehouse.com with an advertised suggested retail price of $500.00, and was led to believe that she received a specific percentage discount on her purchase and purchased the item for less than what the merchandise was worth and normally sold at Barneys New York retail stores and/or on Barneys.com.

---

[20] Friedman, *supra* note 5, at 935 ("If the advertiser never offered a sweater for a bona fide price of $100, the consumer may be left with the impression that the sweater was once tagged with $100 quality, and a moderate discount may trigger the false notion that the seller is offering extra value.  In that scenario, a consumer purchase would be a mismatch of payment and expected value ...").

49.     Upon subsequent investigation it was determined that Barneys never advertised nor sold the item at the represented suggested retail price; rather, Barneys inflated the suggested retail price of this and other items and Plaintiff was deceived by the inflated suggested retail prices into making this purchase.

50.     Relying on Barneys' misrepresentations and false and deceptive advertising, Weidenbach believed that the item she purchased from BarneysWarehouse.com had a suggested retail price and value of $500.00, and further believed that the item was previously offered for sale at Barneys New York retail locations and/or on Barneys.com for $500.00.

51.     The purported suggested retail price and corresponding price reduction and savings were false and deceptive, as the suggested retail price and value of the item was not the $500.00 advertised on BarneysWarehouse.com, but the original suggested retail price and value of $299.00 as previously advertised on Barneys.com.

52.     Weidenbach would not have purchased the item in the absence of Barneys' misrepresentations, and would have paid less than she did for the item.  In other words, not only would Plaintiff have not purchased this merchandise in the absence of Barneys misrepresentations, Plaintiff also paid a premium for the merchandise because the misrepresentations necessarily inflated the perceived value of the merchandise and thus lowered the final value of the merchandise ultimately purchased, irrespective of any subsequent percentage discount thereon.

53.     Weidenbach and similar consumers who have made purchases of Warehouse Merchandise on BarneysWarehouse.com from within the State of California have been personally victimized by and suffered economic injury as a direct result of Barneys' unlawful, unfair and fraudulent conduct.

54.     Further, considering the purpose and history of the Barneys Warehouse sale generally and the striking similarities between the design, layout and content of Barneys.com and BarneysWarehouse.com websites, Weidenbach reasonably understood that the suggested retail price of Warehouse Merchandise reflected the original suggested retail price of merchandise previously offered for sale at Barneys New York retail locations and/or on Barneys.com, and the inflated suggested retail price of the merchandise had the effect of leading her to believe that Warehouse Merchandise offered a specific percentage discount from the original suggested retail price of an item previously offered for sale at Barneys New York retail locations and/or on Barneys.com.

55.     On account of Barneys' purposeful and willful effort to create the impression that Warehouse Merchandise offered specific percentage discounts from suggested retail prices, BarneysWarehouse.com attracts bargain hunters like Plaintiff with sensitive expectations of merchandise with higher perceived values and corresponding discounts, and these expectations of higher perceived values are harmed by Barneys' inflated pricing scheme.

56.     Accordingly, on account of Barneys' purposeful and willful misrepresentations and fraudulent pricing scheme, Weidenbach overestimated the value of the merchandise purchased and ultimately spent more on the merchandise than she would have otherwise but for these misrepresentations.

57.     On or about January 2, 2016, Plaintiff Yang browsed the BarneysWarehouse.com website and observed certain merchandise with advertised suggested retail prices and certain percentage discounts thereon.

58.     On the basis of such representations of suggested retail prices, Yang was induced to purchase the "America Widgeon Heart-Print Faux-Fur Hooded Coat," Style #504521562,

from BarneysWarehouse.com with an advertised suggested retail price of $140.00 before all applicable discounts, and was led to believe that she received a specific percentage discount on her purchase and purchased the item for less than what the merchandise was worth and normally sold at Barneys New York retail locations and/or on Barneys.com.

59.    Upon subsequent investigation, it was determined that Barneys never advertised nor sold the items at the represented suggested retail price; rather, Barneys inflated the suggested retail price of this and other items and Plaintiff was deceived by the inflated suggested retail price into making this purchase.

60.    Relying on Barneys' misrepresentations and false and deceptive advertising, Yang believed that the item she purchased from BarneysWarehouse.com had a suggested retail price and value of $140.00, and further believed that the item was previously offered for sale at Barneys New York retail locations and/or on Barneys.com for $140.00.

61.    The advertised suggested retail price and corresponding percentage price reduction and savings were false and deceptive, as the suggested retail price and value of the item was not the $140.00 advertised on BarneysWarehouse.com, but the suggested retail price of $98.00 as previously advertised on Barneys.com.

62.    Yang would not have purchased the merchandise in the absence of Barneys' misrepresentations, and would have paid less than she did for the merchandise.  In other words, not only would Plaintiff have not purchased the merchandise in the absence of Barneys' misrepresentations, Plaintiff also paid a premium for the merchandise because the misrepresentations necessarily inflated the perceived value of the merchandise and lowered the final value of the merchandise ultimately purchased by Plaintiff, irrespective of any subsequent percentage discount thereon.

63.     Yang   and   similar   consumers   who   have   made   purchases   on
BarneysWarehouse.com from within the State of Florida have been personally victimized by
and suffered economic injury as a direct result of Barneys' unlawful, unfair and fraudulent
conduct.  Considering the purpose and history of the Barneys Warehouse sale generally and the
striking  similarities  between  the  design,  layout  and  content  of  the  Barneys.com  and
BarneysWarehouse.com websites, Yang reasonably understood that the suggested retail price of
Warehouse Merchandise reflected the suggested retail price of items previously offered for sale
at Barneys New York retail locations and/or on Barneys.com, and the inflated suggested retail
price of the merchandise had the effect of leading her to believe that Warehouse Merchandise
offered a specific percentage discount from the original suggested retail price of merchandise
previously offered for sale at Barneys New York retail locations and/or on Barneys.com.

64.     On account of Barneys' purposeful and willful effort to create the impression that
Warehouse  Merchandise  offered  specific  percentage  discounts  from  suggested  retail  prices,
BarneysWarehouse.com attracts bargain hunters like Plaintiff with sensitive expectations of
merchandise with higher perceived values and corresponding discounts, and these expectations
of higher perceived values are harmed by Barneys' inflated pricing scheme.  Accordingly, on
account of Barneys' purposeful and willful misrepresentations and fraudulent pricing scheme,
Yang overestimated the value of the merchandise purchased and ultimately spent more on the
merchandise than she would have otherwise but for these misrepresentations.

65.     Upon subsequent investigation, it was determined that BarneysWarehouse.com
continues to display Warehouse Merchandise being advertised with inflated and fictitious
suggested retail price representations now sold at allegedly lower prices after specific
percentage discounts.  By way of example, the "Zanone V-Neck Cardigan," Style #504556943,

from BarneysWarehouse.com shows an advertised suggested retail price of $625.00 before all applicable discounts.[21]

66.     The identical item bearing Style #504556943 was advertised on Barneys.com and displayed an original retail price of $379.00.[22]

67.     Additionally, the "Timberland Coulter Bluchers," Style #504202264 from BarneysWarehouse.com shows an advertised suggested retail price of $375.00 before all applicable discounts.[23]

68.     The identical item bearing Style #504202264 was advertised on Barneys.com and displayed an original retail price of $259.00.[24]

69.     The reliance of Plaintiffs and Class Members on Barneys' inflated pricing scheme was reasonable and directed by Barneys to drive sales and increase profit margins by creating the illusory perception that consumers were purchasing more valuable items previously offered for sale at Barneys New York retail stores and/or on Barneys.com.

70.     Had Plaintiffs and the consumer public known that the suggested retail prices of Warehouse Merchandise is purposefully, knowingly and willfully inflated by Barneys, and by implication, that Warehouse Merchandise is less valuable and that any price percentage discounts offered thereon are illusory, Plaintiffs and the consumer public would not have purchased Warehouse Merchandise in the absence of Barneys' misrepresentation, and would have paid less than what they actually paid for the item because Plaintiffs and the consumer public hold an expectation of purchasing Warehouse Merchandise at a specific percentage

---

[21] A true and correct screenshot of the item as advertised on BarneysWarehouse.com is appended hereto as Exhibit "G."

[22] A true and correct screenshot of the item as advertised on Barneys.com is appended hereto as Exhibit "H."

[23] A true and correct screenshot of the item as advertised on BarneysWarehouse.com is appended hereto as Exhibit "I."

[24] A true and correct screenshot of the item as advertised on Barneys.com is appended hereto as Exhibit "J."

discount from the original suggested retail prices of merchandise previously offered for sale at Barneys New York retail stores and/or Barneys.com.

71.    In other words, not only would Plaintiffs and the consumer public have not purchased Warehouse Merchandise in the absence of Barneys' misrepresentations, Plaintiffs and the consumer public also paid a price premium for such Warehouse Merchandise because the misrepresentations necessarily inflated the represented value of the merchandise and thus lowered the final value of the merchandise specifically purchased, irrespective of any subsequent percentage discount thereon.

72.    This expectation of purchasing valuable Warehouse Merchandise at specific percentage discounts from original suggested retail prices of merchandise previously offered for sale at Barneys New York retail stores and/or Barneys.com has been purposefully created and maintained by Barneys through, *inter alia,* an extensive uniform targeted electronic marketing campaign which references suggested retail prices and applicable percentage discounts thereon.

73.    Plaintiffs and the Classes appreciate the opportunity to purchase valuable luxury merchandise previously offered for sale at Barneys New York retail stores and/or on Barneys.com at specific percentage discounts and the values associated with such purchases, yet BarneysWarehouse.com continues to show Warehouse Merchandise being advertised with inflated and fictitious suggested retail price representations now sold at allegedly lower prices after certain percentage discounts thereon.

74.    Plaintiffs intend to purchase Warehouse Merchandise in the future yet cannot discover through reasonable investigation whether the suggested retail prices of all merchandise advertised on BarneysWarehouse.com represents an accurate reflection of suggested retail

prices and true value of identical items previously offered for sale at Barneys New York retail locations and/or on Barneys.com.[25]

75.      As such, Plaintiffs and the Classes will be exposed to a measurable risk of future harm by unknowingly being subject to Barneys ongoing fraudulent pricing scheme and thus seek injunctive relief ordering Barneys to comply with New York, Florida and California advertising laws, and prohibiting Barneys from using the deceptive practices discussed herein.

## CLASS ACTION ALLEGATIONS

76.      Plaintiffs incorporate and reallege by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

77.      Plaintiff Rona Yen (the "New York Plaintiff") brings this action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3) on behalf the members of the proposed Classes (as defined below). The proposed New York Class consists of:

> All individuals who, from within the State of New York, purchased BarneysWarehouse.com merchandise at inflated suggested retail prices and who have not received a refund or credit for their purchase(s) within the applicable statute of limitations period preceding the date of the filing of this lawsuit until the date of disposition of this action. (the "New York Class").

78.      Plaintiff Kelly Weidenbach (the "California Plaintiff") brings this action pursuant to Rule 23(a), (b)(2) and (b)(3) on behalf of a proposed California Class which consists of:

> All individuals who, from within the State of California, purchased BarneysWarehouse.com merchandise at inflated suggested retail prices and who have not received a refund or credit for their purchase(s) within the applicable statute of limitations period preceding the date of the filing of

---

[25] By way of example, the "Rebecca Taylor Embellished Dress," Style #504332368, is advertised on BarneysWarehouse.com with a suggested retail price of $450.00 before all applicable discounts. A search of the identical item advertised on Barneys.com leads to the result "Product ID 504332368 is not available on Barneys New York." This means that the consumer public cannot verify the accuracy of suggested retail prices of certain merchandise as advertised on BarneysWarehouse.com by comparing the suggested retail prices of identical items as previously advertised on Barneys.com. True and correct screenshots of the item as advertised on BarneysWarehouse.com and Barneys.com are appended hereto as Exhibit "K."

this lawsuit until the date of disposition of this action. (the "California Class").

79.     Plaintiff Melanie Yang (the "Florida Plaintiff") brings this action pursuant to Rule 23(a), (b)(2) and (b)(3) on behalf of a proposed Florida Class which consists of:

> All individuals who, from within the State of Florida, purchased BarneysWarehouse.com merchandise at inflated suggested retail prices and who have not received a refund or credit for their purchase(s) within the applicable statute of limitations period preceding the date of the filing of this lawsuit until the date of disposition of this action. (the "Florida Class").

80.     The proposed classes referenced in the preceding paragraphs are collectively referred to herein as the "Classes."

81.     The claims asserted herein are applicable to all consumers who purchased Warehouse Merchandise from BarneysWarehouse.com within the States of New York, California and/or Florida at inflated suggested retail prices.

82.     There is a well-defined community of interest among members of the New York, California and Florida Classes, and the disposition of the claims of these members of the Classes in a single action will provide substantial benefits to all parties and to the Court.

83.     Notice can be provided to the members of the New York, California and Florida Classes through publication or otherwise using techniques and a form of notice to those customarily used in consumer class actions arising under New York, California and/or Florida law and applicable federal law.

84.     Excluded from members of the Classes are Barneys, its parents, subsidiaries, affiliates, officers and directors, any entity in which Barneys has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

85.    *Numerosity*: The members of the Classes are so numerous that joinder is impractical.  The New York, California and Florida Classes consist of thousands of members, the precise number of which is within the knowledge of, and can be ascertained by, resort to Barneys records.  Therefore, the Classes are sufficiently numerous that joinder of all members of the New York, California and Florida Classes in a single action is impracticable under Federal Rule of Civil Procedure 23(a)(1), and the resolutions of their claims through the procedure of a class action will be of benefit to the parties and the court.

86.    *Existence and Predominance of Common Questions of Fact and Law*: This action involves numerous questions of law and fact common to members of the New York, California and Florida Classes which predominate over any questions affecting only individual members of the Classes.  These common questions of law and fact arise out of Barneys' practice and policy of engaging in false and deceptive advertising and pricing schemes in respect to its BarneysWarehouse.com merchandise, and include, without limitation, the following:

a.    Whether, during the Class Period, Barneys used inflated suggested retail prices and falsely advertised illusory percentage discounts on Warehouse Merchandise;

b.    Whether, during the Class Periods, the suggested retail prices of Warehouse Merchandise advertised by Barneys were the prevailing market prices preceding the dissemination and/or publication of the advertised suggested retail prices;

c.    Whether Barneys engaged in unfair, unlawful and/or fraudulent business practices under New York law;

d.    Whether Barneys' use of false or deceptive price advertising constituted false advertising under New York Law;

e.    Whether Barneys engaged in unfair, unlawful and/or fraudulent business practices under California law;

f.    Whether Barneys' use of false or deceptive price advertising constituted false advertising under California Law;

g.     Whether Barneys engaged in unfair, unlawful and/or fraudulent business practices under Florida law; and

h.     Whether Barneys use of false or deceptive price advertising constituted false advertising under Florida Law.

87.     *Superiority*:  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable. Furthermore, although the aggregate damages sustained by the Classes may well be in the millions of dollars, the damages suffered by individual members of the Classes may be relatively small as compared to the cost of litigation, and the expense and burden of individual litigation would make it difficult or impossible for individual members of the Classes to address the wrongs done to them. The likelihood of individual members of the Classes prosecuting their own separate claims is remote and, even if every member of the New York, California and Florida Classes could afford the cost of independently litigating his or her claim, the cost to the court system of adjudication of such litigation by individual plaintiffs would be substantial and unduly burdensome. Individualized litigation would also present the potential for inconsistent or contradictory judgments and would magnify the delay and expense to all parties with multiple trials of complex factual issues of the case.  By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and the judicial system and protects the right of each member of the New York, California Class and Florida Classes.  Moreover, Barneys has acted on grounds or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the members of the Classes as a whole.

88.     *Typicality*:  Plaintiffs' claims are typical of the claims of the members of the New York, California and Florida Classes whom they seek to represent because Plaintiffs and each member of the Classes have suffered damages in a uniform manner as a result of Barneys wrongful pricing scheme when they purchased goods from BarneysWarehouse.com that falsely conveyed a fictitious suggested retail price and a purported specific percentage discount thereon. Accordingly, Plaintiffs have no interests antagonistic to the interests of any other member of the classes.

89.     *Adequacy*:  Plaintiffs are adequate representatives who will fully, fairly and adequately assert and protect the interests of the Classes.  Plaintiffs have retained counsel competent and experienced in class action litigation who will zealously prosecute this matter on behalf of the Classes to its conclusion.

90.     *Ascertainability*:  Barneys keeps extensive computerized records of its BarneysWarehouse.com customers.  Barneys has one or more databases through which a significant majority of the members of the Classes may be identified and ascertained, and it maintains contact information, including email and mailing addresses, through which notice of this action could be disseminated in accordance with due process requirements.

91.     All members of the Classes, including Plaintiffs, were uniformly exposed to one or more of Barneys' misrepresentations or omissions of material fact claiming that Warehouse Merchandise with advertised suggested retail prices was offered for sale at those advertised suggested retail prices at Barneys New York retail locations and/or on Barneys.com.  On account of the scope and extent of Barneys inflated pricing and advertising scheme, uniformly disseminated through an extensive campaign to New York, California and Florida consumers through, *inter alia,* uniform electronic advertising, such misrepresentations or omissions of

material fact were uniformly made to all members of the New York, California and Florida Classes. In addition, it can be reasonably presumed that all members of the Classes, including Plaintiffs, affirmatively acted in response to the representations made through Barneys false advertising and pricing scheme when purchasing Warehouse Merchandise.

## COUNT I
### *(New York General Business Law § 349)*

92.    The New York Plaintiff incorporates and realleges by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

93.    The New York Plaintiff brings this claim individually and on behalf of all other New York Class Members who purchased Warehouse Merchandise from within the State of New York pursuant to New York Gen. Bus. Laws § 349 ("NYGBL § 349").

94.    NYGBL § 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]."

95.    Barneys' pricing scheme of inflated suggested retail prices and corresponding specific percentage discounts to New York consumers constituted a false, misleading and deceptive representation of a discount. Accordingly, Barneys has violated NYGBL § 349 by representing to members of the Class an inflated suggested retail price and corresponding fictitious percentage discount price for Warehouse Merchandise.

96.    Such acts and practices violate NYGBL § 349 because they induced the New York Plaintiff, and are likely to induce New York consumers, into the false belief that Barneys offers Warehouse Merchandise with values, discounts or bargains that exceed their true prevailing values. Consequently, New York purchasers, including the New York Plaintiff, reasonably believed that they were obtaining Warehouse Merchandise at a bargain that was

offered for sale at Barneys New York locations and/or on Barneys.com at substantially higher prices and thus were of higher value than what was actually paid.

97.    Barneys' representations concerning the suggested retail prices of Warehouse Merchandise were material to the New York Plaintiff and consumers who purchased Warehouse Merchandise and but for the fact that the New York Plaintiff and consumers ascribed an artificially higher value to Warehouse Merchandise, they would not have purchased them and would have paid less for such merchandise.

98.    Barneys' representations of inflated suggested retail prices and corresponding percentage discounts deceived the New York Plaintiff and New York consumers into believing that Warehouse Merchandise was being offered at certain values, discounts and bargains from the suggested retail prices of merchandise offered for sale at Barneys New York retail locations and/or Barneys.com.

99.    Accordingly, New York consumers, including the New York Plaintiff, reasonably believed that they were receiving merchandise that was offered for sale at Barneys New York retail locations and/or Barneys.com at substantially higher prices and thus was measurably perceived to be worth more than what they actually paid. This perception induced reasonable consumers, including the New York Plaintiff and members of the New York Class, to purchase Warehouse Merchandise, which they otherwise would not have purchased and would have paid less for such merchandise..

100.    The New York Plaintiff and each member of the New York Class was injured in fact and suffered monetary harm as a result of Barneys purposeful and willful misrepresentations.  Barneys is liable to the New York Plaintiff and each member of the New

York Class for actual damages or fifty dollars, whichever is greater, and treble damages up  to one thousand dollars where applicable.

101.    Barneys' purposeful and willful deceptive acts and practices have allowed it to wrongfully profit from the New York Plaintiff and members of the New York Class and as a result of this unjust enrichment, Plaintiff requests that this Court cause Barneys to restore this money to the New York Plaintiff and each member of the New York Class, to enjoin Barneys from continuing to violate NYGBL § 349 as discussed herein and/or from violating NYGBL § 349 in the future.  If such an order is not granted, the New York Plaintiff, members of the New York Class, and the general consumer public may be irreparably harmed and/or denied an effective and complete remedy.

**<ins>COUNT II</ins>**
*(New York General Business Law § 350)*

102.    The New York Plaintiff incorporates and realleges by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

103.    The New York Plaintiff brings this claim individually and on behalf of all other New York Class Members who purchased Warehouse Merchandise from within the State of New York pursuant to New York Gen. Bus. Laws § 350 ("NYGBL § 350").

104.    NYGBL § 350 prohibits false advertising in the conduct of any business, trade or commerce.  False advertising is defined as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

105.    Barneys' pricing scheme of inflated suggested retail prices and corresponding specific percentage discounts to New York consumers constituted false advertising because such conduct advertised a false, misleading and deceptive representation of suggested retail prices.   Accordingly,

Barneys has violated NYGBL § 350 by advertising to members of the Class an inflated suggested retail price and corresponding fictitious percentage discount price for Warehouse Merchandise.

106.    Such acts and practices violate NYGBL § 350 because they induced the New York Plaintiff, and are likely to induce New York consumers, into the false belief that Barneys offers Warehouse Merchandise with values, discounts or bargains that exceed their true prevailing values.  Consequently, New York purchasers, including Plaintiff, reasonably believed that they were obtaining Warehouse Merchandise at a bargain that was offered for sale at Barneys New York locations and/or on Barneys.com at substantially higher prices and thus were of higher value than what was actually paid.

107.    Barneys' advertisement of representations concerning the suggested retail prices of Warehouse Merchandise were material to the New York Plaintiff and consumers who purchased Warehouse Merchandise and but for the fact that the New York Plaintiff and consumers ascribed an artificially higher value to Warehouse Merchandise, they would not have purchased the merchandise and would have paid less for such merchandise.

108.    Barneys' advertisement of representations of an inflated suggested retail prices and corresponding fictitious percentage discounts deceived the New York Plaintiff and the New York Class into believing that Warehouse Merchandise was being offered at certain values, discounts and bargains from the suggested retail prices of merchandise offered for sale at Barneys New York retail locations and/or Barneys.com.

109.    Accordingly, New York consumers, including the New York Plaintiff, reasonably believed that they were receiving merchandise that was offered for sale at Barneys New York retail locations and/or on Barneys.com at substantially higher prices and thus was

measurably perceived to be worth more than what they actually paid. This perception induced reasonable consumers, including the New York Plaintiff and members of the New York Class, to purchase Warehouse Merchandise, which they otherwise would not have purchased and would have paid less for such merchandise.

110.    The New York Plaintiff and each member of the New York Class was injured in fact and suffered monetary harm as a result of Barneys false advertising. Barneys is liable to the New York Plaintiff and each member of the New York Class for actual damages or five hundred dollars, whichever is greater, and treble damages up to ten thousand dollars where applicable.

111.    Barneys' purposeful and willful deceptive advertising has allowed it to wrongfully profit from the New York Plaintiff and members of the New York Class and as a result of this unjust enrichment, Plaintiff requests that this Court cause Barneys to restore this money to the New York Plaintiff and each member of the New York Class, to enjoin Barneys from continuing to violate NYGBL § 350 as discussed herein and/or from violating NYGBL § 350 in the future. If such an order is not granted, the New York Plaintiff, members of the New York Class, and the general consumer public may be irreparably harmed and/or denied an effective and complete remedy.

## COUNT III
### (California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.)

112.    The California Plaintiff incorporates and realleges by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

113.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code § 17200.

114.    Barneys violated the UCL by representing a false suggested retail price and corresponding percentage discount for Warehouse Merchandise.   As a result, the inflated suggested retail price and corresponding percentage discount was a false, misleading and deceptive illusion of a discount and the value of Warehouse Merchandise.

115.    These acts and practices caused the California Plaintiff, and are likely to cause consumers, to falsely believe that Barneys is offering value, discounts or bargains applicable to Warehouse Merchandise that did not, in fact, exist.   Consumers, including the California Plaintiff, reasonably believed that they were receiving products that regularly were offered for sale at Barneys New York retail locations and/or on Barneys.com at substantially higher prices (and were, therefore, worth more) than what they paid.   This perception has induced reasonable consumers, including the California Plaintiff, to purchase Warehouse Merchandise which they otherwise would not have purchased and would have paid less than the amount actually paid.

116.    The gravity of the harm to members of the California Class resulting from these unlawful, unfair and fraudulent acts and practices outweigh any conceivable reason, justification and/or motive of Barneys for engaging in such deceptive acts and practices.   By committing the acts and practices alleged above, Barneys has engaged in unlawful, unfair and fraudulent business practices within the meaning of the UCL.

117.    Moreover, the inflated pricing scheme of Barneys is unlawful because the Federal Trade Commission Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce (15 U.S.C. § 45(a)(1)) and false advertisements (15 U.S.C. § 52(a)).   As described herein, Barneys inflated suggested retail price scheme are deceptive practices prohibited by the FTCA.

118.     Through its unlawful, unfair and fraudulent business practices, Barneys has wrongfully profited from the California Plaintiff and the California Class.  As such, Plaintiff requests that this court cause Barneys to restore this money to the California Plaintiff and all Class members, and to enjoin Barneys from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Otherwise, the California Plaintiff and the California Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## COUNT IV
*(California False Advertising Law, Bus. & Prof. Code § 17500 et seq.)*

119.     The California Plaintiff incorporates and realleges by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

120.     Cal. Bus. & Prof. Code § 17500 provides that "[i]t is unlawful for any . . . corporation . . . with intent . . . to dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . ."

121.     Barneys' advertising of Warehouse Merchandise containing false suggested retail prices was unlawful false advertising within the meaning of the FAL because such suggested retail prices were deceptive and untrue statements concerning the worth, value and former price of certain Warehouse Merchandise.

122.     Barneys inflated suggested retail price scheme was an unfair, deceptive and misleading advertising practice because it created the false impression that Warehouse Merchandise was offered for sale at Barneys New York retail locations and/or on Barneys.com at

substantially higher prices and thus were worth more than such merchandise actually were offered for sale.

123.      Moreover, the FAL provides that "no price shall be advertised as a former price . . . unless the alleged former prices was the prevailing market price . . . within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement." Cal Bus. & Prof. Code § 17501.  Barneys has violated and continues to violate the FAL and California law by advertising false discounts from purported suggested retail prices that were, in fact, not the prevailing suggested retail prices within the three months next preceding the publication and dissemination of advertisements containing the false former prices.

124.      Through its unfair, unlawful and fraudulent acts and practices, Barneys has unlawfully profited from the California Plaintiff and the California Class.  As such, Plaintiff requests that this court cause Barneys to restore this money to Plaintiff and all Class members, and to enjoin Barneys from continuing to violate the FAL as discussed herein and/or from violating the FAL in the future; otherwise, the California Plaintiff and the California Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## COUNT V
### (Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq.)

125.      The California Plaintiff incorporates and realleges by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

126.      Pursuant to the CLRA, the California Plaintiff and each member of the proposed class are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

127.     Barneys' sale of goods to the California Plaintiff and the Class were "transactions" within the meaning of Cal. Civ. Code § 1761(e) and the products purchased by the California Plaintiff and the Class are "goods" within the meaning of Cal. Civ. Code §1761(a).

128.     As described herein, Barneys violated the CLRA by falsely representing the nature, existence and amount of percentage discounts by inflating suggested retail prices.  Such pricing schemes violated Cal. Civ. Code § 1770, subsection (a)(9) ("[a]dvertising goods or services with intent not to sell them as advertised") and subsection (a)(13) ("[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions").

129.     The California Plaintiff relied on Barneys' false representations in deciding to purchase Warehouse Merchandise and the California Plaintiff would not have purchased such merchandise absent Barneys misrepresentations and would have paid less than the amount paid for such merchandise.

130.     The California Plaintiff requests this Court enjoin Barneys from continuing to violate the CLRA as discussed herein and/or from violating the UCL in the future.  As to this cause of action, at this time the California Plaintiff seeks only injunctive relief, and reserves the right to amend to pursue claims for actual, punitive and statutory damages as appropriate pursuant to the notice provisions of § 1782(a) of the CLRA.

## COUNT VI
### (Florida Deceptive and Unfair Trade Practices Act,  Fla. Stat. § 501.201 et seq.)

131.     The Florida Plaintiff incorporates and realleges by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

132.     The Florida Plaintiff brings this claim individually and on behalf of all members of the Florida Class.

133.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), *Fla. Stat.* §§ 501.201 to 501.213.  The express purpose of the FDUTPA is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." *Fla. Stat.* § 501.202(2).

134.     The sale of Warehouse Merchandise falls within the meaning of "trade or commerce" within the scope of the FDUTPA.  *Fla. Stat.* §§ 501.201 to 501.213.

135.      The Florida Plaintiff and members of the Florida Class are "consumer[s]" as defined by the FDUTPA.  *Fla. Stat.* § 501.203.  Each of the Warehouse Merchandise is a "good" within the meaning of the Act.  Barneys is engaged in trade or commerce within the meaning of the Act.

136.     Section 501.203(3)(a) articulates that a violation occurs if the advertisement violates "the standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts." Section 501.203(3)(c) articulates that a violation occurs if the advertisement violates "any law, statute, rule, regulation or ordinance which proscribes unfair methods of  competition, or unfair, deceptive, or unconscionable acts or practices."

137.     Section 501.204(1) declares as unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

138.     In determining what "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful, due consideration and great weight are given to the interpretation of the Federal Trade Commission.  *See Fla. Stat.* § 501.204(2).  The FTCA prohibits "unfair or deceptive acts or

practices in or affecting commerce" and specifically prohibits false advertisements. (15 U.S.C. §§ 45(a)(1) and 52(a)). The FTC has established guidelines which prohibit false former pricing schemes, similar to Barneys in all material respects, as deceptive practices that would violate the FTCA:

> (a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's original price.
> (b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based. 16 C.F.R. § 233.1.

139.   Barneys' use of and reference to a materially false suggested retail price and purported percentage discounts in connection with its marketing and advertisements concerning its Warehouse Merchandise, violated and continues to violate the FTCA, 15. U.S.C. §§ 45(a)(1) and 52(a), as well as FTC Guidelines published at Title 16, C.F.R. § 233.

140.   Barneys' representation of inflated suggested retail prices and corresponding specific percentage discount prices to consumers constituted a false, misleading and deceptive illusion of a discount.

141.   As a result, Barneys *per se* has violated the Act by engaging in, and continuing to engage in, unfair and deceptive practices, and false advertising by representing to its customers

inflated suggested retail prices and corresponding fictitious percentage discount price for Warehouse Merchandise.

142.    Such acts and practices are unfair because they induced the Florida Plaintiff, and are likely to induce Florida consumers, into the false belief that Barneys is offering Warehouse Merchandise at the stated percentage discounts or bargains from suggested retail prices. Consequently, purchasers, including the Florida Plaintiff and members of the Florida Class reasonably believed that they were obtaining merchandise at a specific percentage discount from the original suggested retail prices of merchandise offered for sale at Barneys New York retail locations and/or Barneys.com at substantially higher prices (and were, therefore, worth more) than what they paid.  But for the fact that Florida consumers ascribe an artificially higher value to the Warehouse Merchandise, they would not have purchased such merchandise and would have paid less for such merchandise.

143.    The reasonable consumer relies on Barneys to honestly represent the price and any associated discounts for its Warehouse Merchandise and the Florida Plaintiff and members of the Florida Class relied on the truth of Barneys misrepresentations set forth herein and, in reliance thereon, purchased Warehouse Merchandise.  The Florida Plaintiff and members of the Florida Class would not have made such purchases but for Barneys' false representations of inflated suggested retail prices and illusory percentage discounts.

144.    Barneys' unfair acts and practices described above have directly and proximately caused injury to the Florida Plaintiff and members of the Florida Class.  Pursuant to Section 501.211(1) of the FDUTPA, the Florida Plaintiff and other members of the Florida Class seek a declaratory judgment and court order enjoining Barneys from continuing to engage in the above

described wrongful acts and for restitution and disgorgement of all profits Barneys improperly earned from the Florida Plaintiff and members of the Florida Class.

145.     Additionally, pursuant to Sections 501.211(2) and 501.2105 of the FDUTPA, the Florida Plaintiff and members of the Florida Class makes claims for damages, pre-judgment interest, attorney's fees and costs.   The amount of interest which is to be  calculated, is a sum certain and capable of calculation, and the Florida Plaintiff and members of the Florida Class are entitled to interest in an amount according to proof.

## PRAYER FOR RELIEF

146.     WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the members of the Classes request that this Court award relief against Barneys New York, Inc., as follows:

a.  An order certifying that this action may be maintained as a class action, that Plaintiffs be appointed Class Representatives and Plaintiffs' counsel be appointed Class Counsel;

b.  An order enjoining Barneys from continuing to violate NYGBL §§ 349 and 350, UCL § 17200, *et seq.*, FAL § 17500, *et seq.*, CLRA § 1750, *et seq.*, and FDUTPA §§ 501.201 to 501.213, as described herein;

c.  Award general damages, according to proof;

d.  Awarding actual damages or fifty dollars, whichever is greater, payable to the New York Plaintiff and members of the New York Class for violations of NYGBL § 349, and treble damages up to one thousand dollars where applicable;

e.  Awarding actual damages or five hundred dollars, whichever is greater, payable to the New York Plaintiff and members of the New York Class for violations of NYGBL § 350, and treble damages up to ten thousand dollars where applicable;

f.  Awarding restitution and disgorgement, according to proof;

g.  Awarding interest, including prejudgment interest at the legal rate;

h.  Awarding attorneys' fees and costs; and

i.   For such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

147.        WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the members

of the Classes demand a jury trial for all of the claims so triable.

Dated:        New York, New York
              January 17, 2017

**SCHILLER LAW GROUP, PC**

By: /s/Allan Schiller_____
Allan Schiller, Esq.
675 Third Avenue, Suite 2400
New York, New York 10017
Telephone: (212) 768-8700
as@asfirm.com

*Attorneys for Plaintiffs and Proposed*
*Class Counsel*